# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 25 2015, 7:38 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Richard F. Comingore
Rensselaer, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of:<br>P.W. (Minor Child)<br>and<br>M.W. (Mother)<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | November 25, 2015<br><br>Court of Appeals Case No.<br>37A03-1506-JT-677<br><br>Appeal from the Jasper Circuit Court<br><br>The Honorable John D. Potter, Judge<br><br>Trial Court Cause No.<br>37C01-1409-JT-146 |

**Bailey, Judge.**

# Case Summary

M.W. ("Mother") appeals the trial court's order, which terminated her parental rights as to P.W. ("Child"). Mother presents one issue for our review: whether the Department of Child Services ("DCS") presented clear and convincing evidence to support the termination of Mother's rights as to P.W.

We affirm.

# Facts and Procedural History

Child was born to Mother on March 25, 2011. Mother and Child's birth father agreed to Child's adoption by another family. After this, in January 2013, the adoptive family sought vacation of the adoption decree in the Jasper Circuit Court; this petition was denied. On March 5, 2013, in a different court, Mother filed a petition to adopt Child; on April 30, 2013, Mother's petition was granted.[1]

On September 10, 2013, Mother was dropped off at work by her then-boyfriend, Michael Delaney ("Delaney"). While Mother was at work, she received a phone call from Delaney that Child had hit his head on the toilet. Child was

---

[1] Child's birth father did not join Mother in the adoption petition, and was not a party to this case.

transported to a hospital in Rensselaer, where physicians determined that Child had suffered head trauma as a result of abuse. Child was transported to Riley Children's Hospital in Indianapolis, where surgeons removed approximately half of the bone in Child's skull to relieve the pressure on his brain. Child remained hospitalized in Indianapolis for more than one month.

[5] On September 13, 2013, the trial court entered an order of detention as to Child and held an initial hearing on the matter. On February 7, 2014, the trial court adjudicated Child as a CHINS, ordered Child's removal from the home, and entered a no-contact order prohibiting Mother from having any contact with Child.

[6] Subsequent to this, DCS provided Mother with services, including parenting classes, substance abuse evaluations, random drug screening, psychological evaluations, and substance abuse therapy. Psychological care was also recommended. For some periods of the CHINS proceeding, Mother complied with some of the requirements of the DCS service plan. However, Mother did not complete substance abuse treatment, did not obtain psychological care, failed to appear for several drug screens, and failed a drug screen. Mother also moved frequently during the CHINS proceeding, did not maintain a stable residence, did not maintain stable employment, did not save money to use for renting a single-family residence, and did not take advantage of DCS offers of assistance in finding suitable housing.

During the CHINS proceeding, on November 14, 2013, Mother was charged in Jasper County with two counts of Neglect of a Dependent Resulting in Serious Bodily Injury, as Class B felonies, in relation to the injuries that Child suffered on September 10, 2013. On July 30, 2014, Mother was charged with Obstruction of Justice, as a Level 6 felony, in Newton County; Mother pled guilty to this charge and was ordered to serve probation. On November 6, 2014, Mother was charged in Cass County with Illegal Consumption of an Alcoholic Beverage, as a Class C misdemeanor. On December 30, 2014, again in Cass County, Mother was arrested and charged with Operating a Vehicle While Intoxicated and Endangering a Person, as a Class A misdemeanor; Failure to Return to Scene after Accident, as a Class C misdemeanor; and False Informing, as a Class B misdemeanor. Moreover, Mother was found to have violated probation in the Newton County case, as a result of which Mother's probation was revoked and she was incarcerated on February 23, 2015.

On September 30, 2014, DCS filed its petition to terminate Mother's parental rights. A hearing was conducted on the petition on May 21, 2015. On May 22, 2015, the trial court entered its order terminating Mother's parental rights. Mother was incarcerated during the hearing and when the trial court entered its order, and criminal cases remained pending against Mother in Jasper and Cass Counties.

This appeal ensued.

# Discussion and Decision

[10] Mother contends that the trial court erred when it terminated her parental rights, arguing that there was insufficient evidence from which the court could conclude that DCS had established the statutory requirements for termination of parental rights by clear and convincing evidence.

[11] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).

[12] Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13] Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)    A court has entered a finding under IC 31-34-21-5.6 that

reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[14]    If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial

court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[15] Here, Mother challenges the trial court's order with respect to Subsections 31-35-2-4(b)(2)(B) and 31-35-2-4(b)(2)(D). Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See L.S.*, 717 N.E.2d at 209. Mother contends that there was insufficient evidence to establish any of the requirements.

[16] We disagree. The evidence that favors the trial court's order indicates that Mother only intermittently engaged with DCS-provided services, and that these services did not result in beneficial changes in behavior such that Mother could make appropriate choices for her and Child's safety. After admitting to the use of heroin, Xanax, and marijuana, and after having tested positive for use of hydrocodone, Mother only availed herself of drug-treatment services in September through December of 2014. Mother did not complete these drug-treatment services, failed to be present on at least six occasions for random drug testing, and tested positive for marijuana on one occasion.

[17] Not including the charges relating to Child's injuries on September 10, 2013, Mother was arrested three times during the CHINS proceeding. On each occasion, the arrests stemmed from conduct involving the use of marijuana or alcohol. As a result of one of these incidents, mother was in jail during July, August, and September 2014. Two of the arrests occurred when Mother was

actively involved in drug treatment programs during November and December 2014, and Mother's probation was revoked in another case, leading to her incarceration during the final months of the CHINS action.

[18] Mother did not obtain stable housing. She instead refused DCS assistance in obtaining housing and moved numerous times. Mother often lived in Rensselaer, but also resided in Remington, Logansport, Hammond, Lucerne, and Indianapolis at various times during the case. Mother's unstable housing, together with being incarcerated during portions of both 2014 and 2015, precluded her from participating in DCS-ordered services. All of this supports the trial court's conclusion that there was a reasonable probability that continuing the parent-child relationship posed a threat to Child's well-being.

[19] Mother also contends that DCS failed to establish by clear and convincing evidence that termination of her parental rights was in Child's best interests. Yet Mother's unstable housing and employment situation, and her ongoing legal, drug, and psychological problems—which include untreated depression and potentially bipolar disorder—do not militate in favor of Child returning to Mother's care. Moreover, Child spent most of his life out of Mother's care, including the entirety of the CHINS proceeding. Testimony was heard that Child has bonded with his foster parents and does not request contact with Mother. In light of this evidence, we cannot conclude that the trial court erred when it found that reunification with Mother was not in Child's best interest.

To the extent Mother contends that matters such as the trial court's use of the term "numerous" in its order or DCS was somehow at fault for her criminal conduct after Child's removal from her care, we note that these amount to requests that we reweigh evidence, which we cannot do. Finding no error, we affirm the order terminating Mother's parental rights.

Affirmed.

Baker, J., and Mathias, J., concur.